25-1165 Eastern Arkansas, Tim Griffin v. OptumRx, et al. All right, Mr. Michel, we'll hear from you first. Thank you, Your Honor, and may it please the Court, Chris Michel for Defendant's Appellants, Express Scripts, and Optum. Defendants administer prescription drug benefits for both private and federal clients. Some of our largest and most important clients are the United States military, the VA, and federal employee health plans. Because Arkansas brought this suit, at least in part, for or relating to that work under federal officers, we properly removed it to federal court under the plain language of the Federal Officer Removal Statute. The district court remanded because the state purports to disclaim reliance on our work under federal officers and instead to sue only for our work on behalf of private clients. But the state's purported disclaimer does not actually exclude our work under federal officers from this suit for several independent reasons. First, the state's claims target conduct that we carry out indivisibly for federal and non-federal clients. Second, the state's asserted harm is indivisible among our federal and non-federal work. And third, the state's claims at least relate to our work under federal officers, no matter how the disclaimer is construed. The purpose of federal officer removal also supports our removal here. The state attempts to disclaim our work under federal officers not because that work is different or purportedly less harmful in their view, but only because it attempts to avoid federal court. Of course, a plaintiff often can avoid federal court through its pleading because the plaintiff is often the master of the complaint. But critically, as this court has explained in cases like Graves, that rule does not apply under the Federal Officer Removal Statute. Instead, Congress, to protect foundational federal interests, made the defendant the master of removal when a suit is plausibly related to acts under federal officers. Because the defendants here readily satisfy that standard, this court should reverse. I'll begin with what I think is the most straightforward basis for this court to reverse. And that's our work through the FEBA, the Federal Employees Health Benefits Act, our administration of those plans, and in particular, our negotiation of rebates with drug manufacturers in exchange for placement of the drugs on the formularies that we offer to health plans. There's, I think, no dispute in this case that we act under FEBA in undertaking those rebate negotiations. And I think that conclusion follows inextricably from this court's decision in Jax, which held that an insurer who administers a FEBA plan is acting under a federal officer. There's also no dispute, and in fact, my friends for the state concede at page 29 of their brief, that those rebate negotiations are conducted indivisibly for both our federal and non-federal clients. So the only question is whether the complaint actually challenges those rebate negotiations. The state says that it does not, but as we show on pages six and seven of our reply brief, there are multiple places in the complaint where the state plainly does challenge our rebate negotiations and therefore brings this case squarely within the language of the federal officer removal statute. Just to pick one that I think is particular. What would be left of the case if they didn't challenge the rebate process? Are there other pieces theoretically that could have been challenged alone? I think that they have other bases. I think that is one of several bases for their fundamental challenge in this case, which is that we allegedly created a public nuisance. But the challenge to the rebate negotiations is a central part of that challenge. Frankly, we would be properly able to remove even if it was just an ancillary part of the challenge. You're not taking the position that the rebate part is essential. You're taking the position that they actually did challenge it. For sure.  Yes, for sure. I think there are lots of places in the complaint, but page 366 of the appendix, this is their complaint. It's under a heading called role of PBMs in causing opioid epidemics. And they say defendant-specific conduct that led to the oversupply included, there are some ellipses in here, colluding with opioid manufacturers to increase opioid sales through favorable placement on formularies in exchange for rebates and fees. So we're simply taking them at their own words. I think page 390 of the appendix has another straightforward quote. This is under a heading called defendants fueled the opioid epidemic in Arkansas. So to Chief Judge Colleton, this is really the heart of their complaint, although we don't even have to satisfy that standard. It says defendants negotiated rebate payments, fees, and other incentives from opioid drug manufacturers in exchange for preferential placement of their drugs on PBM formularies. So I think that's a very straightforward way to resolve this case, and it also squares with what the First Circuit did in the Puerto Rico case that we cite in our briefs, and what the Fourth Circuit did in the West Virginia case that we cite in our briefs, and what Judge Acuda relied on in her concurring opinion in the California case that we cite in our briefs. And I think the Court could stop right there. Another straightforward way to resolve the case is to look at our administration of TRICARE. This is the military program that we do under the DOD. Again, I don't think there's a dispute in this case that we are acting under a federal officer when we administer the TRICARE formulary, as well as use our mail pharmacy to administer TRICARE. So then the question is, well, is the suit for or related to that work under DOD, under TRICARE? And I think it plainly is when you look at what the state's alleged harm is. Yet here are a few quotes from their complaint. They allege that we, quote, flooded the state with opioids. That's at page 402 of the appendix. And created an illegal secondary market, also at page 402 of the appendix. They talk about increased costs for the states related to health care, law enforcement, and criminal justice. Now, the critical point is that when you're looking at this alleged flood of opioids or a secondary market or action by law enforcement, there is no way to disentangle the conduct under federal officers from our conduct for private clients. For example, if the police or a state agency is trying to break up an illegal secondary market of opioids, there's no way they're going to be able to say, well, was that opioid dispensed initially under a PBM's relationship with a federal program, or was it like TRICARE, or was it dispensed instead through a PBM's relationship with a private employer health plan or some kind of other health plan? This is the insight from the Fourth Circuit's 3M decision that we cite in our briefs. In that case, the alleged harm came from contamination that a producer released while it was both working for federal clients and non-federal clients. And the Fourth Circuit said there's no way to disentangle, there's no way to disaggregate or break apart the component parts of that contamination or pollution, and therefore this suit has to be in federal court, and the federal court will ultimately have to do that disentangling. The same thing applies here. In fact, the flood of opioids is almost literally the same thing as the flood of contamination, in their view, that the Fourth Circuit relied on in that case. I think there's another straightforward way to resolve the case, and that is simply to apply the plain meaning of the related to language. I think the state itself says, as we've discussed, that our rebate negotiations are indivisible. We're doing exactly the same thing for federal and non-federal clients. Even if you were to accept their disclaimer for all it's worth, I think it's very difficult as a plain language matter to say that the suit is not at least related to our conduct under federal officers. And, in fact, they say in their briefs they plan to introduce evidence in this case that involves our conduct under federal officers, or that is the same as our conduct as federal officers, the indivisible conduct. And I think that's about as close as you can get to a concession that ultimately this is at least related to our work under federal officers, which the Supreme Court has said is a broad phrase that has to be interpreted in keeping with its plain meaning. And that was, in fact, the purpose of the 2011 amendments to the federal officer removal statute, as this Court has recognized in cases like American Petroleum Institute. All of this, I think, as I said at the outset, also does further the purposes of the federal officer removal statute. What we have here is a contractor administering very important government programs, health care for the military, health care for the VA, health care for federal employees. Congress, going all the way back to the War of 1812, has taken the position that when there are suits for or related to federal conduct like that, even if it's a private entity acting under a federal officer, that has to be in federal court because of the structural concern that state courts could be willingly or perhaps inadvertently hostile to federal operations. And so I think we're squarely within that category here. And, in fact, there is something somewhat disturbing about the state trying to be the one that disclaims the federal work in this case because, of course, the purpose of the federal officer removal statute is to protect federal officers from the state and from the state courts. We don't cast any aspersions on our friends from Arkansas here, but as a structural matter, that's the judgment that Congress has made. It's an express departure from the well-pleaded complaint rule that Congress, according to the Supreme Court, has embodied in Section 1331, the typical federal question statute. Speaking of federal question, I don't think you need to reach it in this case, but we do have an alternative argument that federal question jurisdiction is satisfied here, too. Again, I think the best place to start there is with the plain words of the complaint. On Appendix 393, the state says that it invokes our federal duty under the Controlled Substances Act, quote, to state the duty owed under Arkansas tort law. By their own admission, they are saying that our duty under federal law is an element of their claim in Arkansas tort law. And I think we're squarely within the realm of cases like the Welschlager v. Royal Canin decision from this court in 2020. That was the first of the two Royal Canin decisions from this court that concluded that when a complaint alleges that an element is satisfied by federal law, in that case it was the FDCA, there was a claim that the pet food in that case didn't comply with, the pet food maker didn't comply with its duties under the FDCA, then the case can be brought into federal court under the federal question statute as construed by the Supreme Court in cases like Grable. So I think this case is on all fours with that one. The question is clearly actually disputed. It's a substantial question because it goes to the meaning of federal law, and it wouldn't disrupt the federal-state balance to adjudicate this in federal court. The easiest way to see that is that there's a massive MDL in federal court in Ohio that involves these same claims. I don't think anybody suggests that the federal-state balance has been disrupted. If there are no further questions, I'd like to reserve the balance of my time for rebuttal. Very well. You may do so. Thank you for your argument. Mr. Watson, we'll hear from you. Mr. Chief Judge, and may it please the court, the state of Arkansas sued the defendant PBMs in state court under three state law causes of action, seeking to hold them accountable related only to their non-federal conduct for their role in the opioid epidemic in Arkansas, where thousands of adults, children, and babies have been and continue to be harmed. After the PBMs were moved, claiming federal officer and federal question removal, the district court remanded this court should affirm, turning first to federal officer removal. Defendants must prove four elements, only three of which the state challenges. One, whether they were acting under the direction of a federal officer when creating the national formularies and non-federal formularies in the standard utilization management rules. Two, whether there is a causal connection between that conduct and the federal authority. And three, whether there is a colorable federal defense. First, defendants were not acting under federal direction whenever they created their national formularies, other non-public formularies, and standard utilization management rules. As this court held in Doe v. BJC, that's 89F41037, it discussed quite extensively the acting under prong. And there it explained that there must be a delegation of legal authority, or the defendant must be performing a federal duty. Here, there is no federal authority or duty to create national standard off-the-shelf formularies or utilization management rules. Instead, that is completely separate. Could Arlington County v. Express Scripts in the Fourth Circuit actually hold that the administrator of a health benefit plan under the FEHBAA or TRICARE is acting under the direction of a federal officer? There is no disclaimer in the Arlington County case like there is here. Here, the state has repeatedly since the time of the complaint, and today right now in argument, disclaimed that we are seeking to hold defendants liable for their federal conduct with their contracts under FEHBAA, TRICARE, and the VHA. Here, we are seeking only liability based on the non-federal conduct. What about this concern that you can't disaggregate activities, for example, on the rebate negotiations for the reasons stated in the cases that were discussed today? Yes, Your Honor, so two points, maybe three points. First, I think that that analysis falls under the causal connection element of the federal officer removal. Second, when looking at that, we do believe that it is divisible. As the defendant's notice of removal documents show, the federal contracts they have are completely separate from the non-federal contracts. The federal contracts are regulated by statutes, regulations, and the contracts that the defendants have with the government themselves. Those are separate that can be identified and set to the side. Not only are the contracts completely separate from the standard off-the-shelf formularies that the state is challenging, the actual prescriptions that go out under the federal contract and federal plans are traceable. They're traceable from the manufacturer all the way to the patient. This is an allegation that we make in the complaint at JA-369, and the defendant's removal documents confirm that in the Jenkins Declaration at JA-478, where they've already specifically identified about 400,000 TRICARE opioid prescriptions that entered Arkansas. That makes this case unlike the Maryland case in 3M out of the Fourth Circuit, excuse me, the Maryland v. 3M case out of the Fourth Circuit that my friend discussed briefly. In that case, Maryland was challenging 3M's contamination of waterways. And once the PFAS, specifically with PFAS, once the PFAS entered the waterway, it was impossible, quote, impossible to identify the price source of the contaminant, whether that be from federally related PFAS or non-federal PFAS. And the same is true for the rebate cases that Your Honor asked about. There was a single negotiation in those cases that encapsulated both the federal and non-federal conduct that flowed to both of those contracts. Here, we are not challenging the rebate negotiation at all. We're only challenging the contracts that the defendants have with non-federal entities, non-federal health plans. Well, your complaint refers to the rebate process several times. Your Honor, it does obviously refer to the rebates several times, and two responses to that. First, that is not the basis of our complaint. The fact that there are rebates is not the illegal conduct that we are challenging the defendants engaged in. It shows at most that they were paid for the conduct we are challenging. And so, again, I think that it's distinguishable for that reason from the Puerto Rico and Caremark cases, for example. And second, I would say that it is factually different. Even those citations that discuss rebates aren't discussing the rebate negotiations. They're discussing the rebates themselves, which supports the point that this is only showing that there was payment for the conduct we are challenging. We're not challenging the payment itself, the rebate itself. As I read Judge Billy Roy Wilson's opinion, it appeared to me that in looking at what he was citing and what he was talking about, that he relied almost entirely, I think entirely, on the allegations in the complaint and did not seem to give weight or credence to the notice of removal. And, of course, case law says that the court must credit the removing party's allegations. Do you see that as any problem here? Your Honor, no, I don't see a problem here. So you're certainly correct that the cases say that the defendant's theory of removal is credited, but that doesn't mean that the defendants get to change the allegations in the plaintiff's complaint. The plaintiff is still the master of his complaint, as the Supreme Court, affirming this court recently reaffirmed in Royal Canin, that the plaintiff is the master of his complaint and can excise federal jurisdiction if the plaintiff intends to do that. And that's exactly what the state has done here. I'd also like to briefly return... Yes, Your Honor. Just to make sure I understand the argument or your response here. It's on the district judge's statement that no federal officer, essentially what he said was no federal officer directed these allegedly illegal actions or objectionable actions. It's a very short discussion of that issue. Do you think that was the appropriate perspective by the district judge? Or did the judge look at this too narrowly? Your Honor, I think the district judge got it right. The actions challenged by the state of Arkansas are the defendant's non-federal conduct, the creation of national off-the-shelf formularies and other formularies, as well as the standard utilization management practice. But wasn't he a little more narrow than that? Wasn't he referring to illegal, the objectionable conduct, not otherwise innocuous conduct? It seemed to me that what he was saying is no one's contending that a federal agent directed the oversupply of opioids to the population. Your Honor, I think that the district court's opinion should be read in light of the law and the allegations that the state has made. But that is what the district court said, right? I'm not going to dispute the language in the district court's order. Really, page four kind of seems to say that relatively plainly. And so the issue becomes, of course, is that if we look at the body of law, it looks like the judge is saying that in order for the federal officer removal statute to apply that you have to act at the specific behest or direction of somebody, when the reality is that what they need to show is essentially that they were not necessarily directed, but they were acting because they were fulfilling a basic governmental task pursuant to a contract, right? Your Honor, again, I understand what you're saying, but that is not the challenged conduct here. The federal contract and the conduct taken under that is not what is challenged. But what they're saying is you can't disaggregate, you can't separate it, that in fact in order to establish this claim you're going to attack the federal action as well, right? Right. Your Honor, two points in response to that. First, as this court explained in the American Petroleum case, it is the charged conduct that must have the connection or association with the federal action. In that case, it was about these leases that the defendants had, and they were charging specifically, the plaintiff was, the marketing conduct. And the defendants tried to say, well, this is sort of related to our production of oil, and that is related to federal leases. And I think that's what our friends on the other side are attempting to do here. They're not looking at the specific challenge act. They're trying to take it one step removed from the challenge act and say, well, these acts are sort of the same. And so they go together. What they're saying is the acts are in fact the same because they were negotiated at the same time, applying the same principle by the same people for the same purposes, right? Your Honor, they do say that about the rebate negotiations. I don't take them to say that their national formularies were created at the same time they were creating the federal formularies that were, again, required to meet certain specifications under statutes, regulations, and, again, the contracts. Are the formularies different? Yes, Your Honor, they are. Well, let's go back to your point that you say you're not really challenging the rebate negotiations. Isn't that what you said at the outset here? Yes, Your Honor. All right, so the other side pointed to a couple parts of the complaint. I thought I'd give you a chance to address one of them. So paragraph 32 says you're challenging defendant-specific conduct that drove the increases and led to oversupply, which included colluding with Purdue Pharma and other manufacturers to increase opioid sales through favorable placement on national formularies in exchange for rebates and fees. Excuse me. Isn't that really an allegation about the rebate negotiations? Your Honor, I don't believe so, and that's for two reasons. First, it is not challenging the negotiation itself. It is challenging the downstream payment of those rebates, and what that was in exchange for is the illegal conduct that is being challenged. Again, the payment of the rebate itself is not what's being challenged. The negotiation of the rebate is not what's being challenged. Those provisions in the complaint only state that the defendants were paid for the allegedly illegal conduct. How about this one, paragraph 133? Defendants negotiated rebate payments and other incentives from opioid manufacturers in exchange for preferable placement of their drugs on the formularies. Your Honor, that's still, I would say, not the allegation that is being alleged to be illegal here. It is just a simple background fact that exists. To say that any background fact that may be connected to federal officer removal then suddenly brings the case to court would essentially destroy the case. You say that's a background fact. What do you say is the actual fact that's being challenged? Yes, Your Honor. I think a good spot to look is at JA 369, where we specifically identify that the conduct challenged here is the national formularies and standard utilization management rules. What paragraph are you referring to? Your Honor, I apologize. I don't have the paragraph number off the top of my head. All right. Go ahead. Even if the court didn't find that sufficient, though, the state has since removal continually disclaimed that they were seeking liability and are seeking liability under the rebate negotiations. As the cases throughout the circuits have identified, post-removal disclaimers are completely fine. For example, the Fourth Circuit in the Maryland v. 3M case discussed briefing at the appellate court. It relied on Raul from the seventh case where the disclaimer occurred at oral argument. Here there's, in the Wild case out of the Fifth Circuit, as will happen at the briefing stage before the appellate court. What's your later disclaimer that you're relying on? Your Honor, in our briefing, both at the district court level and here, we've said, and today at oral argument I've said, that we are not relying on the rebate negotiations to seek liability against the defendants. We're only looking at their non-federal formulary creation, their non-federal standard utilization management rules, and only non-federal conduct. Unless the court has any further questions about the federal officer, I see my time is running short. I can quickly turn to federal question removal. However you wish to proceed. Yes, Your Honor. I just would like two quick points. First, when you get to federal question, the presumption against removal returns, unlike the federal officer statutes. And also, this court has explained that it is only a special and small category of cases when state law causes of action raise federal questions. One point, as time is running out, I do want to point out that the claim here, the negligence claim, the duty arises under Arkansas rules that provides a non-exclusive list of diversion prevention tools. The only reference to CFR is in relation to that non-exhaustive list. And unless the court has any questions. Very well. Thank you for your argument. We'll hear rebuttal, Mr. Michel. Thank you, Your Honor. Just a few quick points in rebuttal. I think my friend briefly challenged the acting under, whether we satisfy the acting under requirement, but I think it's clear from this court's cases, including Doe v. SSM and the Jacks case, that an insurer or a middleman administering a FEBA plan is acting under a federal officer. As Judge Erickson pointed out, the Fourth Circuit in the Arlington County case squarely held that Express Scripts, us, the client in this case, was acting under a federal officer in administering TRICARE. I think what my friend then pivoted to is the disclaimer. So this case rises or falls with Arkansas's disclaimer. And I don't think respectfully that he rebutted any of the multiple reasons why the disclaimer does not actually remove our work from federal officers, under federal officers, from this case. Well, he says I just disclaimed it right here at the podium. What about that? Well, I'd point you to footnote 4 of the Fourth Circuit's opinion in West Virginia, which was the case that came after the case we were talking about earlier, the 3M case. And it said we will not accept a disclaimer at oral argument. Rather, the plaintiff has to amend the complaint. And I think that is equally – Do you think it could be amended in a way that eliminates the rebates from this case? No. Well, that's what I was trying to ask you before, and I thought you were saying no, logically you could have done it that way. So a few points. I think they could try to take all of that out of the complaint, but I think the problem for them is that that would mean deleting most of the substance of their allegation in this case. And I suppose they could try that later in the case, and we could debate that later on. But as the quotes that Your Honor read suggest, this is not a background fact. It is under headings like, Oil to PBMs and Causing the Opioid Epidemic, and Defendants Fueled the Opioid Epidemic in Arkansas. So it's very much central to their allegations. And if they were to delete it, I think a lot of their case would go along with it, which is why they haven't done that. That said, although I think you can rely on that issue alone, I don't think they adequately responded to the separate problem that their harm, they allege, statewide public nuisance, a flood of opioids, an illegal secondary market, is that there's no way to trace those opioids at that stage back to our work for federal or non-federal officers. They pointed out that in the 3M case, they said that we know how many opioids we dispensed, but that's not the relevant question. The relevant question is much further down the line where they're alleging the harm occurred, where they're alleging the public nuisance occurred. Can you trace that back to our actions? I don't think that you can do that any more here than you could in the PFAS case, even if the PFAS maker equally knew how many chemicals it produced for federal and non-federal clients, because the problem was that they had intermixed in a way that was impossible to disentangle by the time the harm occurred, and that would be an independent basis to reverse. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file a decision in due course.